UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT *and* TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiffs,

-v-

PACIFIC INDEMNITY COMPANY, FEDERAL INSURANCE COMPANY, *and* AUTOMATED BUILDING MANAGEMENT SYSTEMS, INC.,

Defendants.

25 Civ. 6308 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This insurance coverage dispute arises from an alleged personal injury at a construction site in New York City. Plaintiffs, Travelers Indemnity Company of Connecticut ("Travelers Indemnity") and Travelers Property Casualty Company of America ("Travelers Property") (collectively, "Travelers"), funded a $7 million settlement in the underlying personal injury action on behalf of two entities they insured: T-C 780 Third Avenue Owner LLC (the "Owner") and its general contractor, Turner Construction Company ("Turner"). Dkt. 26 ("SAC"). Travelers contends that two other insurers—Pacific Indemnity Company ("Pacific") and Federal Insurance Company ("Federal")—were obliged to cover that loss, under primary and excess policies those insurers issued to a subcontractor, Automated Building Management Systems, Inc. ("ABM"). Travelers accordingly seeks a declaration that defendants have a duty to defend and indemnify it, and a duty to reimburse amounts paid to settle the underlying action, specifically, $6 million or the combined limits of the Pacific and Federal insurance policies.

Federal moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). Dkt. 28. It contends its excess policy did not cover Turner and Owner, and, to the extent it did, such was limited to losses in excess of those covered by all other available insurance, including from Travelers. Because Travelers has paid the entire $7 million towards the settlement, and no further "loss" remains, Federal argues that the SAC fail to state a viable claim. Travelers opposes. Dkt. 33. It argues that Federal's policy includes an exception for when the insured pledges to provide coverage on a primary and non-contributory basis pursuant to a written contract, such as a subcontract agreement, and that this exception is plausibly pled to be applicable here.

For the following reasons, the Court holds the SAC plausibly states a claim, and thus denies Federal's motion.

## I. Background

### A. Parties

Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut. SAC ¶¶ 4–5. Travelers issued an insurance policy to Owner and its general contractor, Turner. *Id.* ¶¶ 14–15.

Pacific is a Delaware corporation, and Federal is an Indiana corporation, each of which has its principal place of business in Whitehouse Station, New Jersey. *Id.* ¶¶ 6, 8. Pacific and Federal issued policies to ABM, which was hired by Turner's subcontractor to perform work at Owner's construction site. *Id.* ¶ 16.

ABM is a New York corporation with its principal place of business in Floral Park, New York. *Id.* ¶ 10.

### B. Underlying Facts

#### 1. The Construction Project and Subcontractors

Owner, the owner of a construction site located at 780 Third Avenue, hired Turner as a general contractor for an HVAC project at that location (the "Project"). *Id.* ¶ 14. On November 9, 2020, Turner subcontracted the HVAC work to Harbour Mechanical Corp. ("Harbour Mechanical"). *Id.* Harbour Mechanical, in turn, subcontracted portions of that work to two entities: Harbour Technical Services, Inc. ("Harbour Technical"), which was responsible for installing, repairing, and maintaining the physical HVAC equipment, and ABM, which was responsible for the electrical wiring, automation, and programming of the HVAC systems. *Id.* ¶ 16.

The ABM Subcontract required ABM to obtain general liability insurance of at least $2 million per occurrence and umbrella insurance of $5 million per occurrence, and to name the Owner as an "additional insured" on that insurance. *Id.* ¶ 17. The Subcontract also required ABM to name as an additional insured on a primary and noncontributory basis any other party Harbor Mechanical was required to name as an additional insured. *Id.* Per the Harbor Mechanical Subcontract, this expressly included Turner. *Id.* ¶¶ 17–18.

As to the "additional insureds," ABM Subcontract further provided:

> The coverage provided to the additional insureds must be *at least as broad as* that provided to the first named insured on each policy. In the event that any policy provided in compliance with this Insurance Section states that the coverage provided to an additional insured shall be no broader than that required by contract, or words of similar meaning, the parties agree that nothing in this Insurance Section is intended to restrict or limit the breadth of such coverage.

*Id.* ¶ 18 (emphasis added).

The ABM Subcontract also required that ABM, before commencing work on the Project, furnish certificates of insurance and proof that each entity the subcontract identified as additional

insured status had, in fact, been named as such. *Id.* ¶ 19. On February 25, and November 10, 2021, ABM obtained these certificates of liability insurance. *See* Dkt. 26-4. Specifically, the certificates provided:

> ADDITIONAL INSURED: Turner Construction Company, The Turner Corporation, Teachers Insurance and Annuity Association of America (TIAA), T-C 780 Third Avenue Owner LLC, Metlife, Cushman & Wakefield U.S. as additional insured for 780 Third Avenue, New York, NY 10017. The Insurance Policy contains a Waiver of Subrogation Endorsement in favor of Teachers Insurance and Annuity Association of America and the Certificate Holder.
>
> COVERAGE IS PRIMARY AND NON-CONTRIBUTORY.

*Id.* at 2, 6–7.

And they stated that, in addition to Owner and Turner, the policy covered numerous other additional insureds, to wit:

> their directors, officers, agents, employees, successors and assigns, and its respective parent companies, affiliates, related entities, corporations and/or partnerships and its owned, controlled, affiliated, associated and subsidiary companies, corporations, and/or partnerships and the respective agents, consultants, principles [sic], partners, servants, officers, stockholders, directors and employees and all entities required to indemnify [sic] are included as additional[.]

*Id.* at 10–11.

### 2. Claimed Injury and Settlement in State Court

On or about December 10, 2021, Anthony R. Jusino, an employee of Harbour Technical, was assisting ABM, the controls subcontractor, to check an electrical duct at the Project. SAC ¶ 22. Jusino ascended a ladder owned and placed by ABM's employee to inspect the duct. *Id.* ¶¶ 23, 25. At the time, Jusino believed the electrical duct on which he was directed to work was not electrified. *Id.* ¶ 24. Jusino was electrically shocked upon reaching the duct, and fell from the ladder. *Id.*

On January 25, 2022, Jusino sued the Owner and Turner in New York Supreme Court, Rockland County, bringing claims of negligence and violations of Labor Law §§ 200, 240(1), and 241(6) (the "Underlying Action"). *Id.* ¶ 26; *See Jusino v. T-C Third Avenue Owner LLC and Turner Construction Company*, Index No. 030366/2022, Supreme Court of the State of New York, County of Rockland. The Owner and Turner brought a third-party action against ABM, which was later severed. SAC ¶ 27. After cross-motions for summary judgment, the state court dismissed Jusino's Labor Law § 200 claims against Owner and Turner, finding that neither had directed or controlled his work. *Id.* ¶ 29.

Travelers, which insured the Owner and Turner insurer through policies it issued to Harbour Technical, agreed to defend and indemnify the Owner and Turner in the Underlying Action, subject to the availability of other insurance. *Id.* ¶ 31. Travelers alleges that Pacific and Federal were timely placed on notice of the Owner and Turner's claims for additional insured coverage, but refused to defend or indemnify them. *Id.* ¶¶ 53–54.

Travelers settled the Underlying Action for $7 million, to protect Owner and Turner, without contribution from Pacific or Federal. *Id.* ¶ 32. Travelers did so reserving, as a condition of the settlement, its rights to seek reimbursement of what it contends is Pacific and Federal's combined $6 million share. *Id.*

**3. Claimed Injury and Settlement in State Court**

Four insurance policies are germane to this dispute: two issued to ABM by Pacific and Federal (respectively, the "Pacific Policy" and, "Federal Policy") and two issued to Harbour Technical, which insured the Owner and Turner, by Travelers Indemnity and Travelers Property, respectively (collectively, the "Travelers Policy").

**a. The Pacific Policy**

Pacific issued a commercial general liability policy to ABM for the period February 25, 2021 to February 25, 2022, with a limit of $1 million per occurrence. *Id.* ¶ 34. The policy in the aggregate reaches $2 million. *Id.* The Pacific Policy provides coverages for damages an insured is legally obligated to pay because of "bodily injury" occurring during the policy period and caused by an "accident" and a duty to defend any "suit" seeking such damages. *Id.* ¶ 35. It also extends insured status to "organizations that [ABM is] obligated, pursuant to a contract or agreement, to provide with such insurance as is afforded by this policy." *Id.* ¶ 36. This same endorsement modifies the policy's "other insurance" condition:

> If you [ABM] are obligated, pursuant to a contract or agreement, to provide the person or organization shown in the Schedule with primary insurance such as is afforded by this policy, then in such case this insurance is primary and we will not seek contribution from insurance available to such person or organization.

Dkt. 32-1.

Travelers represents that, because the ABM Subcontract required ABM to provide the Owner and Turner with primary general liability coverage, and the Owner and Turner are additional insureds under the Pacific Policy, that policy's coverage is primary to, and non-contributory with, other coverage provided by Travelers to the Owner and Turner. SAC ¶¶ 37–38.

**b. The Federal Policy**

Federal issued an excess liability policy to ABM for the same policy period, with a limit of $5 million per occurrence and in the aggregate (the "Federal Policy"). *Id.* ¶ 40. The Federal Policy sits immediately above the Pacific Policy and incorporates the coverage terms of the underlying Pacific Policy. *Id.* ¶¶ 41–42. As such, it reaches damages an insured is legally

obligated to pay because of bodily injury during the policy period. Insureds under the Pacific Policy, including additional insureds, are insured under the Pacific Policy. *Id.* ¶¶ 42–43.

The "other insurance" condition in the coverage form of the Federal Excess Policy initially provided:

> If other valid and collectible insurance is available to the insured for loss we would otherwise cover under this insurance, our obligations are limited as follows.
>
> This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.
>
> We will have no duty to defend the insured against any suit if any provider of any other insurance has a duty to defend such insured against such suit.
>
> We will pay only our share of the amount of loss, if any, that exceeds the sum of the total:
>
> - amount that all other insurance would pay for loss in the absence of this insurance; and
> - of all deductible and self-insured amounts of any other insurance.

Dkt. 29-6 ("Federal Excess Policy") at 39.

Relevant to the instant motion, on March 4, 2021, Federal issued an endorsement that deleted and replaced that "other insurance" provision with the following:

> If other valid and collectible insurance is available to the insured for loss we would otherwise cover under this insurance, our obligations are limited as follows:
>
> A. This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.
>
> B. We will have no duty to defend the insured against any suit if any provider of any other insurance has a duty to defend such insured against such suit.
>
> C. We will only pay our share of the amount of loss, if any, that exceeds the sum of the total:
>
> 1. amount that all other insurance would pay for loss in absence of this insurance; and

> 2. of all deductible and self-insured amounts under all other insurance.
>
> D. This insurance is not subject to the terms or conditions of any other insurance.
>
> However, with respect to Coverage/Excess Follow Form Coverage A only, paragraphs A. and B. above do not apply if:
>
> - underlying insurance has agreed to provide insurance on a primary non-contributory basis to a person or organization; and
>
> - the insured is obligated pursuant to a written contract or agreement, made prior to injury, damage or offense covered by this insurance, to provide such person or organization with insurance on a primary and non-contributory basis under this insurance;
>
> Then this insurance will not seek contribution from insurance available to such person or organization.

Dkt. 29-7 at 35 (the "Endorsement").

**c. The Travelers Policies**

Travelers Indemnity issued a commercial general liability policy to Harbour Technical, Jusino's employer, for the period March 18, 2021 to March 18, 2022, with a limit of $2 million per occurrence. SAC ¶ 45. Travelers' Property issued an excess and umbrella policy to Harbour Technical for the same period, with a limit of $5 million per occurrence (the "Travelers Excess Policy"). *Id.* ¶ 49. The Owner and Turner are additional insureds under both policies. *Id.* ¶¶ 47, 51. In their "other insurance" provisions, the Travelers' commercial general liability policy stated it was to be excess over other insurance available to the Owner and Turner as additional insureds. *Id.* ¶ 52. It stated:

> If valid and collectible other insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as described in Paragraphs a. and b. below. . . .

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below, except when Paragraph d. below applies.

b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"; . . .

(iv) That is insurance available to a *premises owner, manager or lessor* that qualifies as an insured under Paragraph 4. Of Section II—Who Is An Insured, except when Paragraph d. below applies

Dkt. 32-7 at 31 (emphasis added).

As such, the Travelers Excess Policy is excess over any other insurance except insurance specifically written to be excess as to it. *See* SAC ¶¶ 48, 52.

**B. Procedural History of This Action**

On July 31, 2025, Travelers filed the complaint in this action, seeking declaratory and monetary relief. Dkt. 1. On September 19, 2025, defendants moved to dismiss the complaint. Dkt. 20. On October 9, 2025, Travelers filed an amended complaint. Dkt. 21. On November 4, defendants answered. Dkt. 23. On December 5, 2025, Travelers sought leave to file a second amended complaint, which the Court permitted. Dkts. 24–25. On December 9, 2025, Travelers filed the SAC, the operative complaint here. Dkt. 26.

As against Federal, the SAC pleads four causes of action premised on Federal's alleged obligation to indemnify the Owner and Turner for the Underlying Action immediately upon exhaustion of the Pacific Policy, on a basis primary to and without contribution from Travelers policies: for (1) declaratory judgment; (2) breach of contract; (3) unjust enrichment; and (4) equitable contribution. *Id.* ¶¶ 53–107. On January 8, 2026, Federal moved to dismiss, Dkt. 29 ("Federal Mem."). That day, Pacific answered. Dkt. 27. On February 12, 2026, Travelers opposed Federal's motion. Dkt. 33 ("Opp'n."). On February 27, 2026, Federal replied. Dkt. 34 ("Reply").

## II. Applicable Legal Principles

### A. Motions to Dismiss Under Rule 12(b)(6)

The legal principles governing Federal's motion, which challenge the meaning of terms within the Federal Excess Policy, a form of contract, are familiar. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Where a complaint's claims depend on an insurance policy whose plain and unambiguous terms foreclose coverage, dismissal under Rule 12(b)(6) is appropriate. *See, e.g.*, *Horowitz v. Am. Int'l Grp., Inc.*, 498 F. App'x 51, 53–54 (2d Cir. 2012) (summary order) (affirming trial court's Rule 12(b)(6) dismissal of complaint based on plain terms of insurance policy); *Michael J.*

*Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 103–05 (S.D.N.Y. 2021) (granting Rule 12(b)(6) motion to dismiss based on plain terms of insurance policy).

**B. Interpreting Insurance Policies under New York Law**

The parties' briefs treat New York law as governing interpretation of the Federal Policy, and such "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir. 1989)); *see* Opp'n. at 8–12; Reply at 2–3.

"The initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (cleaned up). Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Morgan Stanley Group,* 225 F.3d at 275). "Where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (1st Dep't 2002) (cleaned up); *see also Essex Ins. Co. v. Laruccia Constr., Inc.*, 71 A.D.3d 818, 819 (2d Dep't 2010) (under New York law, courts must give "unambiguous provisions of an insurance contract . . . their plain and ordinary meaning" (citation omitted)).

Relevant here, a policy must be construed "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005) (cleaned up); *accord Nomura Home Equity Loan, Inc. v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d

572, 575 (2017); *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 262 (2016); *Jefferson Ins. Co.. v. Travelers Indem. Co.*, 92 N.Y.2d 363, 370 (1998) ("courts cannot read policy provisions to be meaningless"). Accordingly, "a court should accord [contract] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

## III. Discussion

In moving to dismiss, Federal construes the Endorsement to provide insurance coverage only in excess of coverage by other insurers. Separately, it argues that, because Travelers already funded the underlying settlement, it is not obliged to cover the claims covered by the settlement. Mot. at 7–8. Travelers opposes. On the coverage issue, it argues that, under the reasonable interpretation of the Endorsement, as to the claims underlying settlement, Federal's coverage obligation was primary. On the payment issue, it argues that it is immaterial that, with primary coverage disputed, Travelers funded the settlement. Opp'n. at 13–17.[1]

The parties' coverage dispute rests on competing readings of the Endorsement. Federal, relying on provision A of the Endorsement, contends that it is obliged only to cover claims in excess of other insurance. Mot. at 7–8. Travelers, relying on the carve-out in the Endorsement following the word "However," contends that that carve-out modified provision A, broadening Federal's coverage obligation where its insured was contractually obligated to provide coverage to the injured person on a primary and non-contributory basis. Opp'n.at 15–16.

[1] For the purposes of this motion, Federal assumes as true Travelers' allegations that the Pacific Policy covered the Owner and Turner on a primary and non-contributory basis, and that ABM was contractually obligated to provide the Owner and Turner with primary and non-contributory coverage under the Federal Policy. *See Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 489 (S.D.N.Y. 2023).

The text and structure of the Federal Policy unequivocally favor Travelers' reading. Federal's interpretation would nullify the critical "other insurance" language—that beginning with "However"—added in the Endorsement. Travelers' interpretation, in contrast, gives effect to that language, which otherwise would be superfluous. And, although the "other insurance" provision is not ambiguous, if it were, the ambiguity would be required to be resolved in favor of Travelers.

In resolving a dispute over insurance coverage, courts begin with the text of the policy. *See Am. Empire Surplus Lines Ins. Co. v. Colony Ins. Co.*, No. 16 Civ. 7946, 2017 WL 4857595, at *3 (S.D.N.Y. Oct. 25, 2017). Under New York insurance law, "it is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) (cleaned up); *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16 Civ. 5664, 2018 WL 10456838, at *5 (E.D.N.Y. July 23, 2018) (same). Put differently, "a modifying agreement should be construed in connection with the original contract in order to ascertain the entire intent of the parties." *Hotel 57 L.L.C. v. FSR Int'l Hotels Inc.*, No. 22 Civ. 9331, 2023 WL 3883971, at *3 (S.D.N.Y. June 8, 2023) (internal quotation marks omitted).

The Court's analysis here begins and ends with the text of the "other insurance" provision. *See, e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F.3d 620, 646 (2d Cir. 2016). The Endorsement, modifying the preexisting coverage form, explicitly carved out two circumstances in which the excess-only coverage limitation would not apply. These were for when (1) the underlying insurance is primary and non-contributory and (2) the insured is

contractually obligated to provide primary and non-contributory coverage. *See* Dkt. 29-7 at 35. The Endorsement added that, in these circumstances, Federal "will not seek contribution from insurance available to such person or organization." *Id.* And, it newly provided, the Federal Policy "is not subject to the terms or conditions of any other insurance." *Id.*

These "other insurance" provisions of the Endorsement make unavoidably clear that, as to the two enumerated areas, Federal's coverage was *not* limited to excess. Federal's contrary construction, however, would deny effect to them. It would negate the Endorsement provisions overriding the excess-only limitation (1) where the underlying insurance was primary and (2) relevant here, where Federal's insured was "obligated pursuant to a [pre-injury] written contract or agreement" to "provide . . . insurance on a primary and non-contributory basis." Travelers' construction, in contrast, gives effect to those Endorsement provisions.

Federal's reading fails not only because it departs from the Endorsement's plain text. It would also render Endorsement provisions superfluous. Under New York law, courts construing terms of an insurance contract, "must [ ] avoid construing conflicting provisions and ambiguities within a policy … in ways that render coverage provisions mere surplusage," and render "an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found, Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004) (summary order). A court is not to adopt a reading that makes a provision "meaningless or without force or effect." *Nomura*, 30 N.Y.3d at 575 (citation omitted); *see Viking Pump*, 27 N.Y.3d at 261 (rejecting construction under which policy provisions "would . . . be rendered surplusage"); *Raymond Corp.*, 5 N.Y.3d at 162 (court must "construe the policy in a way that affords a fair meaning to all of the language employed");

*Jefferson*, 92 N.Y.2d at 370 ("courts cannot read policy provisions to be meaningless"); *see also Am. Empire Surplus Lines Ins. Co.*, 2017 WL 4857595, at *3 (citing *Consol. Edison Co. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)) ("[c]ourts are to construe the words of the policy in a manner that gives meaning to all language, and leaves no provision without force and effect.").

Travelers' construction accords with that precept. It gives force to the language added by the Endorsement by construing it to create an exception to the excess-only default rule of the preexisting coverage form. Federal's construction would make that language surplusage over preceding provisions A through D, which limit all coverage to excess and implement Federal's excess coverage obligation. *See Nomura*, 30 N.Y.3d at 575.

Federal's arguments to the contrary are unavailing.

It, first, states Travelers cannot cite a "single case" supporting that the Court, in construing the Endorsement "should disregard the plain, clear and unequivocal language in Paragraph C." Reply at 3. Federal attacks a straw man. Travelers has not argued that paragraph C should be disregarded. It has argued that paragraph C must be read in the context of the Endorsement as a whole, under which the language added by the Endorsement expressly overcomes the excess-only limitation in A and B. *See Morgan Stanley*, 225 F.3d at 275 (policy language is viewed in the "context of the entire integrated agreement"). Federal relatedly faults Travelers for citing cases that, as synopsized by Federal, treat provisions with language akin to paragraph C's as "indicat[ing] an intent to be excess over all other insurance." Reply at 3 (cleaned up). Those cases, however, arose in connection with payment formulas predicated on the policy coverage being limited to excess.[2] Neither case applied text such as in Paragraph C to

[2] *See, e.g., Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143, 150 (S.D.N.Y. 2015) ("[w]hen this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds" what other insurance would pay); *Bovis*

an Endorsement with the carve-outs here.

Second, Federal argues that Travelers' reading violates the canon against surplusage, because it would render Paragraph C surplusage. That is wrong. Paragraph C retains meaning where the exceptions added by the Endorsement do not apply. Although not an argument about surplusage, Federal relatedly argues that, the Endorsement logically should have provided that paragraph C—like paragraphs A and B—do not apply where the exceptions by the Endorsement exist. That point is fair. The parties debate whether there are circumstances under which paragraph C could impact Federal's coverage obligations where the exceptions added by the Endorsement exist. *See* Opp'n. at 7; Reply at 3. The Court does not have occasion, however, to resolve that debate, because any uncertainty as to that point would not overcome the textual clarity of the Endorsement on the issue at hand.

Third, Federal faults Travelers for citing language from an Insurance Services Office ("ISO") form "not contained in the Federal Excess Policy." Reply at 3. Federal is correct that the ISO form is not part of its policy and cannot supply or displace the policy's terms. But that was not the purpose for which Travelers cited the form. *See* Opp'n. at 10. It did so because the form contains the industry-standard analog of paragraph C, and the form illustrates the operation of paragraph C in connection with excess coverage claims. *Id.* ("When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that *exceeds*" (quoting Dkt. 32-12 at 13) (emphasis added). And under New York law, policy language is construed as understood by a reasonable person "cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Morgan Stanley*, 225

---

*Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 53 A.D.3d 140, 147 (1st Dep't 2008) ("[a]s this insurance is excess over any other insurance . . . , we will pay only our share").

F.3d at 275. In all events, the Court's construction of the Endorsement has not turned on the ISO form. It is based on the plain language and structure of the Endorsement itself.

Finally, even if the Endorsement were held "susceptible to more than one reading" and hence ambiguous, *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 33 (2d Cir. 1999)—and on the points at issue, it is not—that would not assist Federal. Under New York law, ambiguity in an insurance policy provision is construed in favor of the insured and against the insurer. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 600 F.3d 190, 201 (2d Cir. 2010) ("Under New York law . . . we resolve ambiguities in favor of the insured."); *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 448 (S.D.N.Y. 2019) ("ambiguities in contract language must be construed in favor of the insured."); *Fed. Ins. Co. v. Int'l Bus. Machines Corp.*, 18 N.Y.3d 642, 646 (2012) (an ambiguous provision is "interpreted in favor of the insured"); *Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co.*, 585 F. Supp. 3d 463, 471 (S.D.N.Y. 2022) (same). Here, Travelers is the shoes of the insured: the Owner and Turner. Accordingly, any relevant ambiguity in the Endorsement would be construed in its favor.

**CONCLUSION**

For the foregoing reasons, the Court denies Federal's motion to dismiss. The Clerk of Court is respectively directed to terminate the motion pending at docket 28. An order will issue shortly as to next steps in question.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 24, 2026
New York, New York